THE FIRST NATIONAL BANK OF DAVENPORT v. THE DAVENPORT & ST. PAUL R. CO.

1. **Garnishment**: WHEN PROPERTY IS LIABLE: PRINCIPAL AND AGENT. It is not necessary that one should have the independent possession of the property of another, coupled with the right to maintain the custody and control of it, to render it subject to garnishment in his hands. Although he may act under the orders of another who has the disposition of the property, yet he may still be liable as a garnishee in an action against their common employer.

2. ——: RULE APPLIED. C. was the cashier and auditor of a railway company, and was garnished as a debtor holding funds of the latter. After service of the process he surrendered the key of the safe to another employe who in his absence removed the funds of the company therefrom; in his capacity as an employe of the company, he acted under the orders of a general manager who had the entire control and disposition of the moneys of the company in the hands of the cashier: *Held*, that the latter was liable as garnishee.

*Appeal from Scott District Court.*

MONDAY, DECEMBER 11.

THE First National Bank of Davenport, Iowa, recovered judgment against the Davenport & St. Paul Railroad Com-

pany, and the Davenport Railway Construction Company, for the sum of $15,934.77 and costs. On the 3d day of December, 1874, executions were issued on this judgment, and, on the same day, J. S. Conner, among others, was garnished personally, and as treasurer of the Davenport & St. Paul Railroad Company. Feb. 15, 1875, J. S. Conner answered as follows: "In December, 1874, I was engaged in the same business I am to-day secretary and treasurer of the Davenport and St. Paul Railroad, and auditor and cashier of the operating department of the Davenport Railway Construction Company; have been so engaged since 1872. In December last (1874) I had no money in my possession or control belonging to the Davenport & St. Paul Railroad Company, or in which they had any interest. As treasurer of the said railroad company, I had no control over its money except to pay as ordered when I had any in hand. I had no money of this company on hand in December last. I cannot tell without looking at my books whether or not there was any money deposited in the First National Bank to my credit as treasurer.

"The money deposited in the First National Bank lately to my credit as treasurer did not belong to the Davenport and St. Paul Railroad Company, but to the operating department of the Davenport Railway Construction Company. I have been receiving the money of the operating department of the Davenport Railway Construction Company since 1872. From 1872 up to now I have received money belonging to the Davenport and St. Paul Railroad Company, as its treasurer; I cannot tell when and how much without looking at my books. The books are in my possession and control, and I will produce them, the counsel on the other side furnishing the transportation. There was no money in the First National Bank in December last, to my credit as treasurer; the last money received by me as treasurer of the Davenport and St. Paul Railroad was in March, 1874, amount $40. This $40 was received on account of the rent of a house in East Davenport.

"The rents, income, profits, freights, tolls, etc., of the Davenport & St. Paul Railroad, for the years 1873 and 1874, were

under the control of C. W. Smith, general manager of the operating department of the Davenport Railway Construction Company, and were expended in paying the employes, and for supplies furnished for operating the road. The receipts were expended only as ordered by C. W. Smith, general manager of the Davenport Railway Construction Company. After my garnishment on December 3d, 1874, a part of the earnings of the Davenport and St. Paul Railroad were sent to C. W. Smith as general manager, and part were paid to employes by his authority; they were sent to C. W. Smith by the station agents; I do not know how much was paid to the employes after my garnishment. I think Mr. Kellogg was employed by C. W. Smith as assistant cashier, and acted in my place after my garnishment, Dec. 1, 1874. After garnishment my pay as auditor was the same that it was before the garnishment for both auditor and cashier. I have not been paid for that month, December, 1874.

"The president and directors of the Davenport and St. Paul Railroad had nothing to do with its management and operation for the years 1873 and 1874; they had nothing to do with disbursing the money received for operating the road. I do not know of any money in the hands of any one belonging to the Davenport & St. Paul Railroad, or the Davenport Railway Construction Company, or in which either company has any interest. I do not know of any property belonging to either company. The income of the road for the years 1873 and 1874 has paid all the expenses of the road, and for the two years about $4,000 over. As general manager of the Davenport Railway Construction Company, Mr. C. W. Smith has accounted for all the money he has received except for the month of December, 1874. I cannot say how much money Mr. C. W. Smith has unaccounted for; I don't think it is as much as $5,000."

Upon cross-examination and re-examination the garnishee stated: "At the date of the garnishment I had a knowledge of a mortgage on the rents, taxes and profits of the railroad—I knew at the time of the garnishment and before. At the date of the garnishment, December 3, 1874, I had no funds in my

hands belonging to the judgment debtors except what belonged to the operating department of the Davenport Railway Construction Company; I do not know whether these funds were disbursed for operating expenses or not. I had on hand December 3d, at the time of the garnishment, belonging to the operating department of the Davenport Railway Construction Company, three thousand four hundred and forty-three dollars. I don't know that it has been paid out—I never paid it out; it was taken out of the safe in my absence, by order of C. W. Smith, general manager, with the exception of $151.50, which I paid to Mr. French, subsequent to his appointment as receiver. Mr. Smith ordered the funds to be taken from the safe, at least he told me so himself. They were gone, except the draft for $151.50. I have had nothing since the garnishment; I handed over the draft for $151.50 to the receiver, because I thought he had the right to take charge of and receive all the property and funds on hand. In the report to the United States Court it was mentioned among the funds as received from J. S. Conner, garnishee. During the months of October, November, December and January, the earnings were enough to pay expenses, but the receipts were not. The earnings were not received because the amount due for through freight from the Chicago and Northwestern Railway Company was garnished and not yet received. The $40 received for rent was disbursed prior to the garnishment. The funds ($3,443) were taken from the safe during my absence from the city, without my knowledge or consent. The mortgage was given by the Davenport & St. Paul Railroad Company. During my absence Mr. N. H. Wood, the superintendent of the road, had access to the safe; no one else, without his consent, had access to the safe—I delivered the key to him; he knew that I was garnished when I delivered the key to him. I did not know and did not suspect that the funds would be taken out of the safe in my absence.

"Mr. C. W. Smith, nor any one else interested in the funds (the $3,443), has agreed to save me harmless by reason of the said funds having been taken out of the safe. I made no effort to have funds returned, except to remonstrate with Mr. C. W.

Smith; he told me that I was not, and could not be held personally liable. I did not know of any steps I could take to get possession of the said funds, but would have taken steps to regain possession of the said funds. The understanding between Mr. French and me is that the $151.50 is to be paid over as the District Court of Scott County shall direct."

The plaintiff having moved for judgment against the garnishee on this answer, on motion of J. S. Conner it was ordered that his answer be re-taken, and on the 7th day of October, 1875, an additional answer of the garnishee was filed, as follows: "The Davenport & St. Paul Railroad Company was organized to build a road from Davenport, Iowa, to St. Paul, or some point near the north line of the State; a part of the road being completed and in operation, arrangements were made with the Davenport Railway Construction Company, a distinct corporation, by which the latter, some time in 1872, took possession of the Davenport & St. Paul Railroad, and kept possession till the appointment of a receiver in 1874, operating the said railroad all the time. The business of the Davenport Railway Construction Company was conducted in the several different departments. The business of operating the Davenport and St. Paul Railroad was kept separate and apart from its other business, and was conducted by C. W. Smith, of Indianapolis, Indiana, the general manager. I was not an officer of the construction company; for several years I have been an employe; have discharged the duties of auditor and cashier; as auditor I had charge of the accounts of the operating department, examined agents' reports, and kept the books; in this department was also prepared vouchers for labor and supplies. As cashier, it was my duty, with the assistance furnished me, to examine and receipt for the cash remitted by the agents, to make collections from the roads, and generally to cause anything to be done necessary to the prompt and regular collection of the earnings of the road, and to make such disposition of the cash in hand as I was directed from time to time by Mr. C. W. Smith, general manager. Sometimes I deposited in bank to such amount as I was directed; sometimes keeping it in the safe in the office, some-

times getting bills of exchange and remitting as directed. I claim I never was indebted to the Davenport Railway Construction Company; I was not indebted to them on December 3, 1874, when I was garnished; I claim I did not then have in my custody and control any money or property belonging to them. The $3,443 mentioned in my former answer was so much cash in hand in the office, and was in the company's safe, where I had placed it; it was not then, and never was under my control, but was always under the control of my superiors. On being garnished I was forbidden to touch any of the company's money or any money coming in, and was ordered to go to Indianapolis by first train, which I was obliged to do; another was placed in charge of the cash, and I was not allowed to have anything to do with it until after the appointment of the receiver. I was ordered to deliver the key to Mr. Wood, the superintendent, and was obliged to do so; I could not disobey the orders given me; I had not the right nor the power to do so. The office of the Davenport Railway Construction Company, where the business was principally transacted, was in New York City; its officers were B. E. Smith, president; Geo. H. French, secretary; Andrew Carnegie, treasurer; its construction department was in charge of James M. Brown, engineer, with headquarters at Davenport, Iowa; its operating department was in charge of C. W. Smith, with headquarters at Indianapolis, Indiana. Mr. Smith was also in charge of other railroad lines, as general manager, in which the construction company, or some of its members, were interested. The auditor and cashier in the office of a railroad company is simply an employe, and is in no sense an officer of the company."

Upon cross-examination and re-examination, the garnishee further stated: "At the time I was garnished the $3,443 was in my possession, subject to the orders of the general manager; it was in the safe of the company, in the office, locked up; I put it there, as directed by C. W. Smith; I had no right, power or authority to remove it, except as ordered by my superiors. When I said it was in my possession, I simply meant that I had charge of it, to be disposed of as directed by

my superiors. I did not have independent control of that money or any other money belonging to the company that passed through my hands. I had no authority to remove the money from the company's office or safe, except as ordered by my superior. At the time I put the money in the safe, I had the key to the safe, and no one else had a key. At the time I was garnished the money was in the safe, and I had the key. The money that came into my possession, as cashier, was sometimes deposited in the bank; I did so under orders from C. W. Smith. In November, previous to the garnishment, I was expressly ordered not to deposit any money in the bank. I do not know of my own knowledge why this order was given; my opinion is that the money was ordered to be kept in the safe to prevent its being reached by garnishment. What I said as to the money being deposited in the safe to prevent its being garnished, is matter of opinion. At the time I turned the key of the safe over to Mr. Wood, in obedience to the orders of C. W. Smith, the $3,443 was in the safe; I turned the key over immediately after notice of removal. I was garnished on the evening of the 3d of December, 1874, about twenty minutes after six, and was removed the next morning about, or shortly after, nine o'clock."

The garnishee thereupon filed a motion for an order discharging him as garnishee, and the plaintiff filed a motion for judgment against the garnishee for $3,443.

The motion of plaintiff was overruled, and the motion of the garnishee to be discharged was sustained, to all of which the plaintiff excepted. Plaintiff appeals.

*Grant & Smith* and *C. Whitaker*, for appellant.

*Brown & Campbell*, for appellee.

DAY, J.—We have set out in full the answer of the garnishee, because thereon, alone, depends the question of the garnishee's liability.

The garnishee asserts that at the time of his garnishment

he did not have in his custody and control any money or property belonging to the Davenport Railroad Construction Company. Still he concedes that he did have some kind of possession of $3,443, belonging to that company. He sets forth the facts connected with the relation in which he stood to that money, and whether or not it was so in his custody and control as to make him liable to the process of garnishment is a legal inference to be drawn from the facts proved.

1. GARNISH-MENT: when property is liable: principal and agent.

The answer of the garnishee shows that he was auditor and cashier of the operating department of the Davenport Railway Construction Company. As auditor he had charge of the accounts, examined agents' reports, and kept the books. As cashier it was his duty to examine and receipt for the cash remitted by the agents, to make collections from the roads, and to cause anything to be done necessary to the prompt and regular collection of the earnings of the road, and to make such disposition of the cash in hand as he was directed to make from time to time by the general manager, Smith. At the time of his garnishment he had on hand, of money so received, belonging to the operating department of the Davenport Railway Construction Company, $3,443. This money was kept in a safe provided by the construction company, to which the garnishee alone had a key. The garnishee claims that he is not liable because he did not have independent control of the money, but was under obligation to dispose of it as directed by his superiors. The position of appellee cannot be better expressed than in the following quotation from the argument of his counsel: "The fallacy of the plaintiff's argument consists in assuming that the garnishee had these moneys in his *possession* and in *his custody* or *under his control*, a fact which has not only not been proved, but the contrary most clearly and distinctly appears. The possession and *control* of property contemplated by the statute, does not mean the mere *physical* power to take possession of it and carry it off; but the independent possession—the present and immediate *rightful* custody of it, including the right to retain that possession, and to maintain that custody and control of it.

The law does not require that the garnishee should commit a trespass, or a gross breach of faith, in order to obtain or retain possession of the attached property."

Appellee, in assuming that the possession which will warrant the process of garnishment must be an independent possession, coupled with the right to retain possession and maintain custody and control, is, we think, clearly in error. Aside from express contract, one does not obtain such possession and control of the property of another. Suppose a party makes a simple deposit of money in a bank, without any agreement as to the time the deposit shall remain. The bank holds the money entirely subject to the control of the owner. It cannot rightfully hold the money an hour after the owner has directed it to be paid out. Yet it cannot be questioned that, while the money remains in the bank, the bank may be garnished. Suppose garnishment process served upon the bank, and that afterward the owner orders the money to be paid out in a particular way. Does the bank commit a breach of faith in holding the money, and refusing to dispose of it as directed by the owner?

The fallacy of the appellee's argument is in placing the duty of the garnishee to his principal above his duty to obey the mandate of the law. It may be conceded that the answer of the garnishee fully discloses that it was his duty to pay out the money in his possession as ordered by Smith; but the process of the court imposed upon him a paramount duty to retain it in his possession, and an obedience to that order would not render him a trespasser, nor involve him in a breach of faith. We think appellee's counsel concede enough to establish the liability of this garnishee. In their argument they say: "We do not take the ground    *    *    *    * that Conner cannot be held because he was an employe, and not an officer of the corporation. An employe may clearly have such possession—such custody and control of the property of his employer as to subject it to garnishment in his hands. It depends altogether upon the nature of the employment. For instance, the agent of a railroad at one of its stations certainly has the unqualified and independent posses-

sion and control of the moneys of the company which come into his hands. He is only an employe, yet the nature of his employment and of his duties may, and probably would, render the moneys in his hands subject to garnishment. He has the independent possession, control and custody of those moneys; while the cashier whom the company might employ to assist him in his work, by looking after and keeping accounts of those moneys, would not have any such possession and control of them."

Yet, these station agents are subordinate to the garnishee in this case, and are required to remit to him the moneys by them collected. Suppose such an agent had been garnished, and he had immediately been removed, and ordered to pay over all the moneys in his hands to Conner. Could he afterward retain the money without a gross breach of faith? If he could, we are unable to see why the garnishee in this case may not do the same; and, if he could not, it is apparent that a railway company may, at pleasure, render the process of garnishment unavailing. We are satisfied that the appellee had such custody and control of the money in question as to render it subject to garnishment in his hands. He should have retained that possession, and held the money subject to the order of the court. In failing to do so he has magnified his duty to his employer, and has ignored his obligations to the law. The court should have held him liable upon his answer.

REVERSED.